UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JENNA SHAW,<br><br>   Plaintiff,<br><br>   v.<br><br>INSIGHT HEALTH CORP.<br>D/B/A INSIGHT/S IMAGING,<br>CENTER FOR DIAGNOSTIC IMAGING, INC. &<br>CDI MANAGEMENT CORP.<br><br>   Defendants | Civil Action No. |

COMPLAINT
JURY TRIAL REQUESTED
<u>INJUNCTIVE RELIEF REQUESTED</u>

NOW COMES the Plaintiff, Jenna Shaw (Ms. Shaw), by and through undersigned counsel, and complains against the Defendants, Insight Health Corp. d/b/a Insight/s Imaging (Insight) and Center for Diagnostic Imaging, Inc. (CDI Inc.) and CDI Management Corp. (CDI Mgmt.) as follows:

<u>SUMMARY</u>

1. Plaintiff submitted a resume to Defendants, a network of medical imaging facilities, seeking work as a per diem Magnetic Resonance Imaging Technologist (MRI Tech). Plaintiff had previously made a complaint with the Maine Human Rights Commission (MHRC) against a prior employer regarding retaliation by her then-manager. This same individual, Tom MacDonald, was now in upper-level management for Defendants. As a result, Defendants failed to hire Ms. Shaw because of her prior protected activity.

## JURISDICTION AND PARTIES

2. This action arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 *et seq.,* and the Maine Whistleblowers' Protection Act ("WPA"), 26 M.R.S. §§ 831, *et seq.*, as enforced through the MHRA.

3. Ms. Shaw is a United States citizen residing in Mars Hill, Maine.

4. Insight is a Delaware corporation that is registered to do business in Maine.

5. Insight had 500 or more employees for each working day in each of 20 or more calendar weeks in the same calendar year as when the alleged discrimination occurred.

6. CDI Inc. and CDI Mgmt. are Minnesota companies that are registered to do business in Maine.

7. CDI Mgmt. and CDI Inc. had 500 or more employees for each working day in each of 20 or more calendar weeks in the same calendar year as when the alleged discrimination occurred.

8. CDI Mgmt. is owned by CDI Inc. and is contracted by Insight to manage operations.

9. The Defendants are jointly and severally liable for the unlawful retaliation in this matter.

10. In addition, the Defendants acted as an integrated enterprise in connection with the employment actions at issue in this case.

11. There is over $75,000 in dispute in this case.

12. This Court has subject matter jurisdiction over Ms. Shaw's federal and state claims pursuant to 28 U.S.C. §§ 1331, 1332 and 1367.

13. On or about September 13, 2019, Ms. Shaw filed a timely Charge of Discrimination alleging unlawful sex discrimination and retaliation with the MHRC and the Equal Employment Opportunity Commission (EEOC).

14. Ms. Shaw's Charge was assigned to a MHRC Investigator who conducted an investigation.

15. On December 7, 2020, the MHRC Investigator issued an Investigator's Report recommending that the MHRC find that there are Reasonable Grounds to believe that Ms. Shaw had been subjected to unlawful retaliation. A copy of the MHRC Investigator's Report is attached hereto as Exhibit A.

16. On January 13, 2021, the MHRC adopted the Investigator's recommendation and issued a Statement of Finding that there are reasonable grounds to believe that unlawful discrimination has occurred. A copy of the MHRC Statement of Finding is attached hereto as Exhibit B.

17. On April 12, 2021, the MHRC issued a decision indicating that efforts to conciliate the case had failed. A copy of the MHRC Failure to Conciliate letter is attached hereto as Exhibit C.

18. On or about June 22, 2021, the EEOC adopted the MHRC's finding of reasonable grounds with respect to Ms. Shaw's federal law claims. A copy of the EEOC's finding is attached hereto as Exhibit D.

19. Ms. Shaw has exhausted her administrative remedies with respect to all claims set forth in this Complaint.

FACTUAL ALLEGATIONS

20. Ms. Shaw worked as an MRI Tech for another radiology services provider, Alliance Healthcare Services (Alliance), from November 2013 to February 2016.

21. Ms. Shaw filed a Complaint of Discrimination against Alliance with the MHRC and the EEOC in April 2016.

22. Ms. Shaw's Complaint of Discrimination contained allegations pertaining to her former manager, Tom MacDonald.

23. Ms. Shaw's claims against Alliance were resolved through settlement in July 2017.

24. In July 2018, Mr. MacDonald left Alliance and went to work for Defendants as Vice President of Operations and Business Management.

25. In January 2019, Ms. Shaw became aware that Defendants needed a per diem MRI Tech to work at Northern Light Health A.R. Gould (formerly known as The Aroostook Medical Center).

26. On or around January 17, 2019, Ms. Shaw applied for the position when she sent her resume to Mark Dionne, then Regional Manager for Defendants, in Peabody, MA.

27. Mr. Dionne oversaw six outpatient centers from Peabody to Springfield.

28. Ms. Shaw was well-qualified for the Defendants' advertised per diem MRI Tech job.

29. Mr. Dionne told Ms. Shaw that her resume looked good and that he would pass it along to the hiring managers.

30. Mr. Dionne told Ms. Shaw that hiring decisions had to be approved by a manager, (Susan Crosby) and a Vice President (Tom MacDonald).

31. On or around January 22, 2019, Mr. Dionne forwarded Ms. Shaw's resume to Ms. Crosby.

32. Mr. Dionne entered Ms. Shaw's info into the employee referral program.

33. Ms. Shaw's resume was entered into the Defendants' Human Resources database used to track applicants.

34. Ms. Crosby conducted all screening and interviewing for the advertised role.

35. Ms. Crosby reviewed Ms. Shaw's resume and found that Ms. Shaw had several years of experience working as an MRI Tech.

36. Upon initial review of Ms. Shaw's resume, Ms. Crosby did not decline to hire Ms. Shaw based on any perceived or apparent lack of qualifications.

37. Mr. MacDonald had final approval on hiring decisions.

38. Ms. Crosby discussed Ms. Shaw's candidacy with Mr. MacDonald.

39. Mr. MacDonald did not review Ms. Shaw's resume.

40. Mr. MacDonald was aware of Ms. Shaw's prior complaint against Alliance.

41. Mr. MacDonald made the decision to not hire Ms. Shaw.

42. On January 22, 2019, Mr. Dionne told Ms. Shaw that Ms. Crosby had told him that they were "not hiring anybody" for the position.

43. Mr. Dionne told Ms. Shaw that the former head of Alliance was now working for CDI.

44. Mr. Dionne asked Ms. Shaw how things ended for her at Alliance.

45. Mr. Dionne told Ms. Shaw, "They won't contact you." Ms. Shaw replied, "Ever?" He said, "I don't think so."

46. On or around January 22, 2019, Ms. Shaw received an email from Defendants stating that they were hiring another applicant for the position.

47. Defendants did not tell Ms. Shaw that she needed to fill out a formal application in order to be considered for the position.

48. Defendants did not invite Ms. Shaw to apply, then or in the future, for an MRI Tech in training position.

49. During the MHRC investigation, the Defendants alleged that Ms. Shaw was not hired because she failed to submit a formal application.

50. This allegation is contradicted by these facts reflecting that Defendants considered and then rejected Ms. Shaw for the position.

51. Not long after being told that Defendants were not hiring for the per diem MRI Tech position, on or around January 24, 2019, an advertisement for the position was posted.

52. The job ad for the per diem MRI Tech position remained open and posted for several months.

53. Defendants' claim during the MHRC investigation was that Mr. MacDonald "had no role in the hiring decision" and that therefore there was no causal link with Ms. Shaw's prior protected activity.

54. This is not true.

55. During the MHRC investigation, Ms. Crosby stated that she discussed Ms. Shaw's candidacy with Mr. MacDonald.

56. During the MHRC investigation, Mr. MacDonald admitted that he did not review Ms. Shaw's resume, but rather based his decision not to hire Ms. Shaw on his knowledge of Ms. Shaw's work with their prior employer, Alliance.

57. During the MHRC investigation, Ms. Crosby stated that Mr. MacDonald decided that Ms. Shaw was not an appropriate candidate because of "performance issues" while employed by her former employer, Alliance.

58. During the MHRC investigation, Mr. MacDonald suggested that Ms. Shaw was not an appropriate candidate because of "scheduling issues" while employed by her former employer, Alliance.

59. Mr. MacDonald's allegations that Ms. Shaw had prior performance issues and scheduling issues are false and evidence pretext.

60. Mr. MacDonald was directly involved in Ms. Shaw's previous complaint against Alliance.

61. Ms. Shaw's previous complaint against Alliance included allegations that Mr. MacDonald retaliated against her, for complaining about sexual harassment, by not scheduling her, and by allowing the scheduler to retaliate against her by not scheduling her.

62. Mr. MacDonald therefore had motive to retaliate against Ms. Shaw.

63. During the MHRC process, the Defendants alleged, alternatively, that Ms. Shaw was not hired because she lacked necessary qualifications for the open position.

64. This is false.

65. At no time did Defendants tell Ms. Shaw that the reason for the failure to hire was a lack of qualifications.

66. Ms. Shaw was an MRI Tech in Aroostook County for eleven years prior to her application.

67. Ms. Shaw had worked in the same Hospital and on the same machine as the one that she would have used if hired by Defendants.

68. Ms. Shaw's employment record reflects she had the experience and qualifications necessary for the position.

69. During the MHRC investigation, Defendants alleged that Ms. Shaw was not hired because the MRI machine that Ms. Shaw would work on in Presque Isle was a mobile unit located outside of the Hospital and that it was therefore necessary under the rules and regulations that she have a particular MRI certification.

70. This is false.

71. The MRI machine in Presque Isle is located within the Hospital and there is no legal requirement that the person performing MRIs have a particular MRI certification.

72. Ms. Shaw had all licenses and certifications necessary to perform MRIs in Maine and had done so for many years prior to her application.

73. During the MHRC investigation, Ms. Crosby conceded that she has hired applicants without the preferred certification as MRI Techs in training.

74. Some of Defendants own job advertisements reflected that the MRI certification was not needed to perform the job.

75. Mr. Dionne told Ms. Shaw that while Defendants preferred to hire certified MRI Techs, they sometimes waived this requirement because the talent pool for certified MRI Techs is small.

76. Ms. Shaw had worked as an MRI Tech without certification up until the time that she applied for the position with Defendants, including working for Mr. MacDonald at Alliance.

77. Defendants subsequently argued during the MHRC investigation that they hired MRI Techs without the particular certification for other sites such as Bangor but that they could not do so for the Presque Isle site.

78. In fact, after Defendants failed to hire Ms. Shaw, they hired a different MRI Tech who lacked the certification in question.

79. Therefore, Defendants have provided multiple evolving and conflicting rationales for failing to hire Ms. Shaw.

80. The rationales provided by Defendants for failing to hire Ms. Shaw are demonstrably false and evidence pretext.

81. There is evidence of retaliatory animus and motive.

82. Defendants failed and refused to hire Ms. Shaw because she complained about discrimination and retaliation as an employee of Alliance, and because she filed complaints of

discrimination and retaliation with the MHRC and EEOC and filed claims in this Court asserting her rights under Title VII and the MHRA.

## COUNT I: Title VII - Retaliation

83. Paragraphs 1-82 are incorporated by reference.

84. Defendants violated Ms. Shaw's right under Title VII to be free from retaliation for opposing, reporting and complaining about sexual harassment including but not limited to filing a Charge of Discrimination with the EEOC and filing suit alleging violations of Title VII and participating in an investigation, proceeding, and hearing.

## COUNT II: MHRA - Retaliation

85. Paragraphs 1-84 are incorporated by reference.

86. Defendants violated Ms. Shaw's right under the MHRA to be free from retaliation for opposing, reporting and complaining about sexual harassment including but not limited to filing a Charge of Discrimination with the MHRC and filing suit alleging violation of the MHRA and participating in an investigation, proceeding, and hearing.

87. Defendants interfered with Ms. Shaw's exercise and enjoyment of her rights under the MHRA.

88. Defendants' actions violated §4572 and §4633 of the MHRA.

## COUNT III: WPA

89. Paragraphs 1-88 are incorporated by reference.

90. Defendants violated Ms. Shaw's rights under the WPA to be free from retaliation for making a good faith report that she had reasonable cause to believe was a violation of a law or rule adopted under the laws of Maine and the United States as these rights are enforced through the MHRA.

PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court grant the following relief:

A. Declare the conduct engaged in by Defendants to be in violation of her rights;

B. Enjoin Defendants, their agents, successors, employees, and those acting in concert with them from continuing to violate her rights;

C. Order Defendants to instate Plaintiff or award front pay to Plaintiff;

D. Award lost future earnings to compensate Plaintiff for the diminution in expected earnings caused by Defendants' discrimination;

E. Award equitable-relief for back pay, benefits and prejudgment interest;

F. Award compensatory damages in an amount to be determined at trial;

G. Award punitive damages in an amount to be determined at trial;

H. Award nominal damages;

I. Award attorney's fees, including legal expenses, and costs;

J. Award prejudgment interest;

K. Permanently enjoin Defendants from engaging in any employment practices that violate the Title VII, MHRA, and WPA;

L. Require Defendants to mail a letter to all Maine employees notifying them of the verdict against them and stating that Defendants will not tolerate whistleblower retaliation in the future;

M. Require that Defendants post a notice in all of its workplaces of the verdict and a copy of the Court's order for injunctive relief;

N. Require that Defendants train all management level employees on the protections afforded by Title VII, MHRA, and WPA; and

      O.    Grant to Plaintiff such other and further relief as may be just and proper.


Dated at Portland, Maine this 7th day of July 2021


                /s/ Chad T. Hansen
                Chad Hansen, Esq., Maine Bar No. 9489
                Attorney for Plaintiff
                EMPLOYEE RIGHTS GROUP
                92 Exchange Street, 2nd floor
                Portland, Maine 04101
                Tel (207) 874-0905
                Fax (207) 874-0343
                chad@employeerightslaw.attorney